## Case No. 8,480.
### LONG v. DICKERSON.

[15 Blatchf. 459; 7 Reporter. 172; 19 Alb. Law J. 136.] [1]

Circuit Court, S. D. New York. Jan. 14, 1879.

BANKRUPTCY—DISCHARGE—BANKRUPT IN CUSTODY —PROVABLE DEBT—SURETY ON BAIL BOND.

1. The body of D. was taken in execution, and he gave a bond with sureties for the liberties of the jail. Subsequently, he was adjudged a bankrupt and received a discharge from all debts provable against him on March 30, 1878. There had been no breach of the bond at the time the bankruptcy proceedings were commenced. D. then applied to the court for an order discharging him from custody, and discharging the sureties from liability on the bond: *Held*, that, under section 5067 of the Revised Statutes of the United States, the judgment on which the execution was issued was a provable debt, although the body of D. had been taken in execution, and was, therefore, discharged by the discharge.

2. The taking of the body in execution did not give a lien or security which could not be affected by the discharge.

3. The effect of the discharge was to release the judgment. and also the obligation of the sureties on the bond.

[This was a suit by William H. Long, the assignee of Benjamin H. Spaulding, against Alfred J. Dickerson. The case is now heard upon petition of defendant.]

Chamberlain. Carter & Eaton, for plaintiff.
Vanderpoel, Green & Cuming, for defendant.

BLATCHFORD, Circuit Judge. On July 20th, 1875, the defendant caused a warrant of attachment to be issued out of the supreme court of New York, against the property of Benjamin H. Spaulding, then a resident of Massachusetts. The warrant was levied by the sheriff of the city and county of New York, on property belonging to Spaulding. Afterwards, on August 1st, 1875, said property was sold by the sheriff, as perishable, by order of the court. Spaulding was adjudged a bankrupt by the district court of the United States for the district of Massachusetts, in September, 1875, on a petition in bankruptcy filed July 23d, 1875, and the plaintiff was appointed his assignee. In February, 1876, the plaintiff brought this suit, claiming that the levy and sale under said attachment and order constituted a conversion of the property by the defendant.[2] A judgment in favor of the plaintiff was rendered in this suit, against the defendant, November 3d, 1877, for $7,701. An execution on such judgment was issued January 30th, 1878, against the person of the defendant, by virtue of which the defendant was arrested on that day by the marshal of this district. On the same day, in order to be admitted to the liberties of the jail of the county

¹ [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 7 Reporter. 172. and 19 Alb. Law J. 136, contain only partial reports.]

² [For action against sheriff, see Case No. 8,-479.]

of New York, the defendant, with two sureties, executed to said marshal a bond for said liberties, in double the amount of said judgment. On the 6th of April, 1878, the defendant was duly adjudicated a bankrupt by the district court of the United States for this district, and such proceedings were subsequently had in said district court, that, on the 26th of July, 1878, a certificate of discharge was granted to the defendant, whereby he was forever discharged from all debts and claims which were provable against his estate on the 30th of March, 1878, on which day the petition for adjudication was filed against him, except such debts as are by law excepted from the operation of such a discharge. The defendant now applies to this court for an order discharging him from custody under the execution against his person, and discharging the sureties on said bond from all liability thereon, and directing said bond to be delivered up and cancelled.

The defendant contends, that the debt, either as a judgment or as a claim for conversion, was provable in his bankruptcy proceedings; that, therefore, such debt is discharged by the discharge in bankruptcy, it not being one of the classes of debts which are not affected by a discharge; that no judgment remains as a basis for the execution; and that, consequently, the relief asked should be granted.

The plaintiff contends, that, during the whole course of the bankruptcy proceedings, the body of the defendant was in the custody of the law, under the execution, and the remedies of the plaintiff on the judgment were suspended and temporarily extinguished, so that he could not have proved the debt in bankruptcy; that, as the debt could not be proved, it was not discharged; and that the vested right which the plaintiff obtained through the execution and arrest, and the giving of the bond for the limits, cannot be affected by the discharge.

Under the bankruptcy act of April 4, 1800 (2 Stat. 19), the case of Champion v. Noyes, 2 Mass. 481, was decided. It was a scire facias, on a bail bond, against the surety. The bail was given in a civil action at common law, the effect of the condition of the bail bond being, that the defendant should satisfy the plaintiff's judgment, or surrender his body to be taken in execution, or that the bail should pay the debt. The surety pleaded in bar, that the principal was discharged in bankruptcy after the making of the bond; that the plaintiff's demand against the principal might have been proved in bankruptcy; and that the plaintiff obtained judgment before the certificate of discharge was allowed. The plea was held to be a good plea in bar. The court referred to the provision of section 34 of the act, to the effect, that no discharge of the bankrupt should extend to a partner, or to one held or jointly bound with the bankrupt, and said, that the bail, not being a partner with the bankrupt,

LONG (Case No. 8,480)  [15 Fed. Cas. page 826]

nor jointly held or bound with him for the same debt, was not within the restricting clause of section 34. The court remarked, that the principal was discharged from the judgment, and that. were he in execution, it would be the duty of the court to discharge him from prison. The court further said: "The plaintiff having no longer any remedy against the principal, it would be unreasonable to permit him to proceed and make the bail absolutely holden to satisfy his judgment, which is now legally discharged. If the bail were already fixed, the plaintiff might justly consider them as his debtors on their own contract, and. the certificate having no retrospective effect as to the bail, they could derive no relief from it." It was shown that the bail had not become fixed.

There are some cases decided under the bankruptcy act of August 19, 1841 (5 Stat. 440). In Goodwin v. Stark, 15 N. H. 218, one Gillis, being under arrest on an execution on a judgment, executed, with the defendant and another surety, a bond to the plaintiff, conditioned to take the poor debtor's oath, or surrender himself, within one year. Before the expiration of the year, Gillis was discharged in bankruptcy, on a petition filed after the date of the bond. He did not take the poor debtor's oath, or surrender himself, within the year. The court held, that the sureties could not avail themselves of the discharge, in bar of their obligation. It observed, that it might admit of question whether Gillis himself was discharged by his certificate in bankruptcy from the obligation of the bond, the bond itself not being a debt, but an obligation with a penalty, for the performance of one of two acts; that it was not necessary, however, to decide whether the plaintiff had a right to require a performance of the condition of the bond, as against Gillis, after he had procured his discharge and certificate; that it was sufficient, for the purposes of the case, that the sureties could not avail themselves of the discharge, in bar of their obligation; that bail could not plead the bankruptcy and discharge of their principal, in their own discharge; that, that being so, a fortiori, the sureties in a bond like that under consideration could not be discharged by the discharge in bankruptcy of their principal, where a judgment had been rendered, the debtor arrested upon the execution, and security taken, not merely for his appearance to answer to an action, but that he should take the poor debtor's oath, or surrender himself at the jail at a certain time; that the defendant was not a surety for the debt within the provision of section 4 of the act, that no discharge of any bankrupt "shall release or discharge any person who may be liable for the same debt, as a partner, joint contractor, indorser, surety or otherwise, for or with the bankrupt," and the court was not entirely satisfied that it could have

stayed proceedings in the suit, on an application for that purpose; and that how far the defendant was entitled to stand in a better situation than a surety for the debt need not then be considered.

The case of Dyer v. Cleaveland, 18 Vt. 241, was under the act of 1841. One Cleaveland was arrested December 5th, 1842, on an execution on a judgment, and on the same day he, with sureties, gave a bond, with a condition specifying that he was a prisoner for the sum named in the execution, and that he should not depart from the liberties of the prison, unless lawfully discharged. All the obligors were sued on the bond for a breach alleged to have occurred on the 2d of October, 1843. The defendants pleaded in bar, that Cleaveland was discharged in bankruptcy October 7th, 1843, on a petition filed December 14th, 1842. The court held the plea bad. The view of the court was, that, until a breach of the bond, there was no provable debt arising thereon; that the bond, though forfeited before the discharge was granted, was not forfeited before the decree of bankruptcy, which was made February 9th, 1843; and that, therefore, the bond was not a provable debt. The court say: "So long as Cleaveland remained upon the liberties of the jail yard, without departing therefrom, there was no debt or claim, arising from or out of the bond, which was provable under the bankrupt act, either against Cleaveland or his bail."

The case, also, of Kirby v. Garrison, 21 N. J. Law, 179, was under the act of 1841. The defendant was surety on a limit bond, given March 1st, 1841, conditioned that one De Witt should not depart from the prison limits. A breach of the bond was alleged. The defendant pleaded the discharge of De Witt in bankruptcy subsequent to the obtaining of the plaintiff's judgment; and also, that the breach did not occur until after such discharge. The pleas were demurred to. The court say: "De Witt was in custody in order to enforce the payment of the judgment obtained against him. The bond was conditioned to keep within the prison limits of the county, and its object was to retain him until the judgment should be satisfied, or until he should be discharged by due course of law. To coerce him to pay off and satisfy this judgment debt, was, then. the substance and intent of this bond. While so held. he became a certified bankrupt, and the judgment debt was discharged, except so far as any lien may have been saved under the proviso in the bankrupt law. * * * The object of the bond no longer existed when the debt had been discharged. If the debt was discharged and the judgment satisfied, to enforce the payment of which the bankrupt had been previously held in custody, for what purpose shall the bond be retained? * * * We are, therefore, of the opinion, that, if the pleas do not show a strict performance. in the words of the condition, yet that they

show a release by act of law, and that the discharge as a bankrupt may be set up as a bar to an action on the bond."

The case of Claflin v. Cogan, 48 N. H. 411, arose under the present bankruptcy act. A bond was given, with sureties, by one Cogan, in March, 1866, conditioned that Cogan should take the poor debtor's oath within one year, or surrender himself at the jail the next day after the expiration of the year. The bond became absolute, by a breach of its condition, in March, 1867. In March, 1868, Cogan was discharged in bankruptcy, in proceedings commenced November 14th, 1867. In a suit on the bond, the sureties pleaded the discharge. The plea was demurred to. The court held the plea bad, on the ground that the discharge in bankruptcy of the debtor after the bond had become absolute by breach of condition, could not avail the sureties as a defence. The express provision of section 33 of the bankruptcy act of March 2, 1867 (14 Stat. 533), now section 5118 of the Revised Statutes, was cited, that "no discharge shall release, discharge or affect any person liable for the same debt, for or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise."

It is contended, for the plaintiff, that, so long as he had the body of his debtor in execution, he could not prove his judgment in bankruptcy. This does not appear to be a correct proposition. The judgment was, within the terms of section 5067 of the Revised Statutes, a debt "due and payable from the bankrupt at the time of the commencement of the proceedings in bankruptcy," and, therefore, provable against the estate of the bankrupt. There is no provision of the statute, which declares that the holding of the body of the bankrupt in execution, when the bankruptcy proceedings are commenced, shall cause the judgment to be not due and payable, or to be not provable. Under section 5075, when the creditor has a lien on property of the bankrupt, his right to prove his debt is restricted; but the very creation of this restriction strongly implies that no security on the body of the bankrupt is to restrict the provability of a judgment. It may very well be, that, while the plaintiff held the body of the defendant in execution, he could not, aside from the bankruptcy statute, pursue further remedies against the property of the bankrupt; and that the taking of the body in execution would suspend the lien of the judgment on land, and postpone its priority of lien to liens created or rights acquired by others during the imprisonment. Jackson v. Benedict, 13 Johns. 533. But, under the express provisions of the statute, the judgment was and remained a provable debt, notwithstanding the taking of the body in execution. If provable, it was discharged, except so far as it might be necessary to keep it alive to secure rights which had become fixed and vested when the bankruptcy proceedings were commenced.

It is further contended, for the plaintiff, that, however it may be as to the judgment, the plaintiff acquired, by the execution and the arrest, a right or claim to the body of the defendant, as a pledge or security ad satisfaciendum; and that such pledge is a vested right, which is not affected by the discharge in bankruptcy and can be taken away only by express legislation. This view does not commend itself as satisfactory. The arrest of the body of the defendant does not give to the plaintiff a lien or security, in the sense in which a levy on property is a lien or security. The property may be sold and turned into money and that money may be applied on the debt. But the body is held only for the purpose of coercing the debtor to find money wherewith to pay the debt. The body cannot be sold to raise money, or used to earn money, for the benefit of the creditor. The view of the court in Champion v. Noyes, ubi supra, was, that, although the bond of the surety was, that the principal should satisfy the judgment, or surrender his body in execution, or that the surety should pay the debt, yet the principal was discharged from the judgment, so that, if in execution, he would be entitled to be discharged from custody, and, as the liability of the surety was not fixed at the time to which the discharge of the principal had relation, such discharge operated to release the surety. In the present case, there was no breach of the limit bond at the time the bankruptcy proceedings were commenced, and the liability of the sureties had not at that time become fixed. The discharge has relation to that time. In Kirby v. Garrison, before cited, the facts were like those in the present case, and it was held that the judgment was discharged, and that the sureties on the limit bond were released. In Claflin v. Cogan, the bond had become absolute, by breach of condition, before the proceedings in bankruptcy were commenced, and it was held that the sureties were not discharged.

As it is not alleged that there has been at any time any breach of the condition of the limit bond in this case, it is quite clear that the sureties on such bond would have a right to surrender their principal. It is said by the supreme court, in Beers v. Haughton, 9 Pet. [34 U. S.] 329, 358, that "the doctrine is clearly established, that, where the principal would be entitled to an immediate and unconditional discharge, if he had been surrendered, there the bail are entitled to relief, by entering an exoneretur, without any surrender." If the defendant were in close custody now on the execution, it would be the duty of this court to release him, on the ground that the judgment for which he was held was discharged. The limit bond in this case is, in effect, merely an incident of the execution. As there was no breach of the bond, the case is to be treated as if the defendant were in close custody on the execu-

tion, and the effect of the discharge in bankruptcy is to release the judgment and also the obligation of the sureties on the bond. The case is not within the restriction of section 5118, which provides that no discharge shall release, discharge or affect any person liable for the same debt for or with the bankrupt, as joint contractor, surety or otherwise. The sureties in this case never assumed any liability for the original debt or for the judgment. Nor did they ever become liable on the bond, for any debt, for or with the bankrupt. The liability on the bond never became a debt, nor did the bankrupt, before the bankruptcy proceedings were commenced, become liable for any unliquidated damages arising out of the contract contained in the bond, nor was there any contingent debt or contingent liability, within section 5068.

In so far as the views announced in Goodwin v. Stark and in Dyer v. Cleaveland conflict with those above maintained, it is thought that they do not set forth the better rule. It results, from these considerations, that the application of the defendant must be granted.